**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| JUWAN SHAW | : | NO. 08-476 |

**MEMORANDUM RE: PRETRIAL MOTIONS**

**Baylson, J.**                                                                 **November 9, 2009**

**I.      Background**

On November 5, 2008, Defendant Juwan Shaw was indicted on 6 counts: 3 counts of

interference with interstate commerce by robbery (18 U.S.C. § 1951(a)) and 3 counts of carrying,

using, and brandishing a firearm during and in relation to a crime of violence (18 U.S.C. §

924(c)(1)).  The charges arose from three separate robberies at gunpoint, which occurred between

January and May 2007.

According to the indictment, the three armed robberies are as follows:  (1) the January 11,

2007 robbery of a Domino's Pizza delivery driver; (2) the May 21, 2007 robbery of a TastyKake

delivery truck driver; and (3) the May 29, 2007 robbery of the "Lucky's Pizza" shop.

Defendant was arrested on May 29, 2007, following the third robbery alleged in the

indictment.  He has filed a number of pretrial motions, including motions to suppress the

identification procedures used by the police and the in-court identifications by the three separate

victims.  He has also filed a motion asserting improper joinder of the three offenses in a single

indictment, or alternatively, for severance at trial.  The Court held an evidentiary hearing on

August 31, 2009 on the motions to suppress.  This Memorandum sets forth the reasons for the

denial of Defendant's motions by the Order dated November 6, 2009. The government asserts that the facts of the three robberies are as follows:

A.   **January 11, 2007 Robbery**

Around 9:00 p.m. on January 11, 2007, Samuel Said, a white male working as a Domino's Pizza deliveryman, was making a delivery at 5415 Harlan St., Philadelphia. After parking his car, he walked past an individual he subsequently identified as Defendant, who was facing him, on the way to the house. After making the delivery and on Said's walk back to his car, Defendant allegedly approached from the side, pointed a gun in his chest, and stated "give me your money or I'll shoot you." Said told the robber that he had "no authority over him." The robber allegedly responded, "What, are you crazy? I told you I'm going to kill you," and took $40 from Said's pants pocket, struck him in the head with the gun, and ran away.

Said immediately reported the robbery to the police, was treated at the hospital for his head wound, and went to the police station later that night. He gave the following description of the robber: black male, 17-18 years old, dark complexion, heavy build, 5'8" tall, 250 lbs., wearing an oversized gray hoody and blue jeans. He described the gun as a small, black revolver with a brownish handle. Said stated that he believed he would recognize the robber if he saw him. Said reviewed over 200 photographs that night – none of which was Defendant – and did not identify any as the robber. Five months later, on June 6, 2007, Said identified Defendant from a photo array as the robber.

B.   **May 21, 2007 Robbery**

During the morning of May 21, 2007, Martin Sokoloff, a 69 year-old white male working as a TastyKake delivery truck driver, was preparing to make a delivery around 5500 Landsdowne

Ave., Philadelphia.  As he was standing in the back of the truck, an individual Sokoloff

subsequently identified as Defendant entered the truck from the front driver's door, to which

Sokoloff had his back.  Defendant allegedly pointed a gun at Sokoloff from about 3-4 feet away

and demanded that Sokoloff give Defendant his money.  Sokoloff turned to face the robber, who

was then face-to-face with him, reached into his pocket, and handed him $12.  The robber

demanded Sokoloff's wallet, saying "I'm gonna count to five and if you don't give me the wallet,

I'm gonna shoot you."  Sokoloff refused, and the robber fled.  Sokoloff did not report the robbery

at that time.

The next day, May 22, Sokoloff was driving his delivery route and saw a man on the

porch of 1537 N. 55th St., Philadelphia, one block from where he had been robbed the previous

day.  Sokoloff made eye contact and recognized the man as the previous day's robber.  Sokoloff

had seen two police cars parked further down the block, so he drove to the officers to report

seeing the robber.  The officers and Sokoloff immediately drove back to 1537 N. 55th St., but the

suspect was gone.  Sokoloff then informed the police of the previous day's robbery.  On May 29,

the police called Sokoloff to request that he come to the station to attempt to identify the robber.

Sokoloff went to the station the next day, May 30.  Detective Farley showed him a photo array

which included a photo of Defendant.  Sokoloff immediately identified Defendant as the robber.

Sokoloff described the robber's gun as a small, silver revolver.

Sokoloff again identified Defendant as the robber at Defendant's June 6, 2007 state court

preliminary hearing.

### C.    May 29, 2007 Robbery

During the early afternoon of May 29, 2007, Manuel Garcia was working as a cook at

Lucky's Pizza at 1352 N. 57th St., Philadelphia. Lucky's owner, Harisios Pavlou, a 60 year-old white male, was working in the back room. An individual subsequently identified as Defendant entered the restaurant and approached Garcia, asking him for a menu before leaving the restaurant. The individual allegedly returned a half hour later and asked about the cost of a cheesesteak. Pavlou was in the front of the restaurant at this point, and observed the person's exchange with Garcia. Garcia told the individual that he had given him a menu, but the person responded that he had left it at home and forgot the price. Garcia told him the prices, and the individual ordered a small cheesesteak. Pavlou went back to the rear of the restaurant.

As Garcia was cooking the cheesesteak with his back turned, the person walked around to the grill and pointed a gun at Garcia's stomach from 2 feet away. The robber then stated, "Don't move. Put your face down to the floor." Pavlou then came out of the back room, and as he walked towards the front of the store, the robber ordered Pavlou to also lay face down. The robber then tried to open the cash register, but failing, he ordered Pavlou to open it. As the robber attempted to take money from the register, Pavlou grabbed the robber's hand that was holding the gun, and with his other hand, cut the back of the robber's neck with a bread knife. The robber left the restaurant, but while standing on the walk-up steps, he turned towards Pavlou and fired a shot at him from five feet away. The bullet missed Pavlou and went into the restaurant's wall. The robber then fled on foot.

Garcia and Pavlou called the police immediately, and a police officer arrived minutes later. Garcia described the robber as a black male, 14-17 years old, with a dark complexion, heavy build, 5'7", 175-180 lbs., wearing a yellow shirt and gray shorts, and carrying a black revolver. Garcia and Pavlou also stated that the robber's neck was cut and that he held the

yellow shirt on the wound as he fled.

Around that same time, the police got a call that a juvenile male had been attacked and stabbed and was being treated for a head/neck wound at 1537 N. 55th St. (the same location Sokoloff had allegedly seen Defendant the week before). Within 5-10 minutes of his call to the police, Pavlou was taken to 1537 N. 55th St., where he saw Defendant being treated for a neck wound in an ambulance.[1] Pavlou immediately identified Defendant as the man who attempted to rob Lucky's Pizza. The police then placed Defendant under arrest. Defendant refused to answer the officer's questions or give his name, address, or other identifying information. A woman claiming to be Defendant's sister told Officer Williams, within Defendant's earshot, that Defendant's name was Sharif Smith, and Defendant did not correct her.

After the arrest, Detective Hagey obtained a search warrant to search 1537 N. 55th St. for fruits of the crime of the Lucky's Pizza robbery. In support of probable cause to obtain the warrant, Detective Hagey executed an affidavit stating the facts of the Lucky's Pizza robbery and the police canvas of the area that followed. Specifically, Detective Hagey stated that the police canvassed the area following the robbery looking for a suspect that matched the information they had received, they observed Defendant on the porch of 1537 N. 55th St., the front door of 1537 N. 55th St. was ajar, Detective Wojciechowski observed a bloody yellow T-shirt on the floor of the residence, and Defendant was then identified as the robber and shooter by Pavlou. (See Def.'s Mot. Suppress Ex. A.)

---

[1]Defendant claims that Pavlou identified Defendant while he was in handcuffs and "clearly in police custody." The Government claims that Defendant's handcuffs were covered by a sheet when Pavlou identified him.

Defendant also claims that both Pavlou and Garcia were brought to the ambulance to do the show-up. However the Government claims that only Pavlou went to the show up.

Detectives Hagey and Wojciechowski subsequently executed the warrant at around 6:30 p.m. that day. In the rear bedroom, they recovered an unloaded Smith & Weston .38 caliber revolver, a spent .38 caliber casing, and two .38 caliber bullets from the pocket of a pair of blue jeans. The bullet found at Lucky's Pizza could not be tested to match it to the gun, but the casing was consistent with the gun having been fired. The Detectives also found a bloody yellow T-shirt, a Lucky's Pizza menu, a TastyKake box, and Defendant's Social Security card.

Both Pavlou and Garcia separately identified Defendant as the attempted robber on June 25, 2007, at the state court preliminary hearing.

Following defendant's arrest, Detective Wojciechowski prepared a photo array containing defendant's image along with images of seven other individuals resembling defendant. On May 30, 2007 Detective Farley showed this photo array to Sokoloff, the Tastykake delivery driver who was robbed on May 21, 2007 and who reported seeing this same gunman the following day at 1537 North 55th Street. Detectives also contacted Samuel Said, the Domino's pizza deliveryman who was robbed on January 11, 2007, and showed him the photo array on June 6, 2007. According to the government, both Mr. Sokoloff and Mr. Said positively identified defendant from the photo array.

At the August 31, 2009 suppression hearing, the government presented the testimony of Mr. Pavlou, Detective Wojciechowski and the officers. Following the hearing, the Court found that the identification procedure using the photo arrays satisfied the requirements of due process and was not impermissibly suggestive. Tr. at 211. The Court also denied the motion to suppress physical evidence. However, prior to making a final determination on defendant's motion regarding identification testimony, the Court requested briefing by both parties as to whether,

despite the Court's finding, the government was obligated to produce testimony of Mr. Sokoloff

and Mr. Said regarding these witnesses' opportunity to observe defendant prior to their

identifications.  Tr. at 211-12.  The Court also requested briefing as to whether testimony

regarding Mr. Garcia's in-court identification should be suppressed, absent Garcia's testimony

regarding his prior opportunity to observe.  Tr. at 207.

## II.    Legal Standards

In his brief, Defendant incorrectly argues that "[t]he first thing the government must

prove when faced with a motion to suppress identification is that the initial identification

procedures were not unnecessarily suggestive." (Def.'s Post Hearing Memo in Supp. of Mot. to

Suppress ID's 3 (emphasis added).)  Indeed, the Third Circuit has made explicitly clear that when

challenging an identification procedure, "the defendant has the burden of proving that the

identification procedure was impermissibly suggestive."  United States v. Lawrence, 349 F.3d

109, 115 (3d Cir. 2003) (emphasis added) (citing Reese v. Fulcomer, 946 F.2d 247, 259 (3d Cir.

1991)).

Identification evidence is admissible if the procedures were not impermissibly suggestive

or if the identification has independent reliability.  Manson v. Brathwaite, 432 U.S. 98, 114

(1977), Neil v. Biggers, 409 U.S. 188, 199 (1972); see also United States v. Emanuele, 51 F.3d

1123, 1128 (3d Cir. 1995) ("A suggestive and unnecessary identification procedure does not

violate due process so long as the identification possesses sufficient aspects of reliability, for

reliability is the linchpin in determining the admissibility of identification testimony." (internal

quotation marks omitted)).

Courts employ a two-step analysis to determine the admissibility of identification

testimony.  See United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006) ("An identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process.").  First, the defendant must prove that the identification procedure was impermissibly suggestive.  Biggers, 409 U.S. at 198-99.  Second, if the court concludes that the procedure was impermissibly suggestive, the court considers whether the identification was nonetheless reliable, using the five factors enumerated by the Supreme Court in Biggers: (1) the witness's original opportunity to observe the defendant and (2) the degree of attention during that observation; (3) the accuracy of the initial description; (4) the witness's degree of certainty when viewing the defendant or his image; and (5) the length of time between the observation at the crime scene and the identification procedure.  Id. at 200-01.  Whether an identification procedure is reliable depends on the totality of the circumstances.  Id. at 199.

This Court's finding, immediately following the conclusion of the testimony at the evidentiary hearing, that the identification procedures used by the police satisfied due process warrants the Court to deny the Defendant's motion to suppress identification procedures in full.  Similarly, the Court will not suppress Mr. Garcia's in-court identification, and will not suppress identification of the Defendant by the other victims, Mr. Said and Mr. Sokoloff.  Because the Court found that Defendant has failed to meet his initial burden of showing that the photo array or the other identification procedures violated due process, the Court need not consider the reliability of the identification under the "totality of the circumstances."  However, if for any reason the totality of circumstances should be considered, the Court would still find that there was no violation of due process.  The confrontation of the Defendant by the victims of the May 29, 2007 robbery immediately following Defendant's arrest was completely proper.  As the Court

noted at the evidentiary hearing, the photo arrays were themselves properly prepared by the police and were not unduly suggestive.

Similar issues were recently analyzed in the excellent opinion by Judge Reed of this Court in <u>Flamer v. Coleman</u>, 2009 WL 2996472 (E.D. Pa. Sept. 17, 2009) and the opinion by Judge Golden in <u>Pagan v. Brooks</u>, 2008 WL 4838353 (E.D. Pa. Nov. 5, 2008). The Court adopts their analysis.

## III.   **Motion for Severance**

Defendant Shaw claims that joinder of the three sets of counts was improper under Fed. R. Crim. P. 8(a), and alternatively, seeks severance pursuant to Fed. R. Crim. P. 14(a).

Defendant contends that trying the charges arising out of the three incidents together exposes him to a substantial risk of prejudice that would result in the denial of a fair trial in violation of his due process rights. Specifically, he argues that joinder under Rule 8(a) was improper because the three sets of offenses are not of the "same or similar" character, are not based on the "same act or transaction," and are not "connected with or constitute parts of a common scheme or plan." Defendant contends that the three robberies took place at different times of the day, in different locations in Philadelphia, by a robber who was described differently – or not at all – on each separate occasion. Defendant further contends that nothing indicates that the nature of the robberies or the actions of the robber are unique or bear the "signature" of a single robber.

Defendant also argues that even if joinder was proper under Rule 8(a), Rule 14 requires severance because joinder of the three sets of counts will result in substantial prejudice at trial. Defendant contends that each robbery is separate and distinct, and that there is "zero"

overlapping evidence.  Defendant thus argues that he would suffer prejudice as follows: (1) he may be prejudiced in presenting defenses, as he may desire to assert his privilege against self-incrimination with respect to one crime, but not the others; (2) the jury may cumulate the evidence of the separate crimes; (3) the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt; and (4) a latent feeling of hostility may be engendered by the jury against Defendant by the charging of several crimes.

The prosecution responds that joinder under Rule 8(a) is proper because the three robberies were of a similar character, and were part of a common plan or scheme.  Specifically, the prosecution argues that all three robberies were similar in character because:  each robbery involved a gun-point robbery of one or two individuals working in commercial, food preparation, or delivery capacities in the area "immediately surrounding" 1537 N. 55th St. in Philadelphia; each involved the robber viewing or interacting with the victim prior to the robbery, and subsequently approaching the victim(s) from the side or behind, with a small revolver handgun, and stating while in close proximity to the victim some variation of the oral command "give me the money or I'll shoot."  The prosecution further argues that the common scheme or plan was to rob victims at gunpoint within the area immediately surrounding 1537 N. 55th St. in Philadelphia over a span of five months in an effort "to obtain money."  Additionally, the prosecution argues that, contrary to Defendant's assertions, there is substantial overlap in the evidence for each robbery.

The prosecution further responds that Defendant failed to meet his burden for establishing legal prejudice under Rule 14, and instead, only set forth bare assertions of prejudice that fail to require severance.  The prosecution argues that there is no evidence that a joint trial will cause

the jury to improperly infer a criminal disposition and treat the inference as evidence of

Defendant's guilt, or develop a latent hostility against Defendant.

**A.** **Legal Analysis**

**1.** **Joinder Under Rule 8(a)**

Rule 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). The purpose of Rule 8 is to "promote economy of judicial and

prosecutorial resources." United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987). Judicial

economy favors joinder, United States v. Sandini, 888 F.2d 300, 305 (3d Cir. 1989), and courts

tend to allow liberal joinder of offenses. United States v. Kemp, 2004 WL 2757867, at *3 (E.D.

Pa. Dec. 2, 2004) (Baylson, J.). Therefore, Rule 8 is broadly construed in favor of initial joinder,

and courts tend to construe the meaning of "same or similar character" very broadly. United

States v. Hudgins, 2007 WL 1695376, at *2 (E.D. Pa. June 12, 2007) (Baylson, J.), aff'd 2009

WL 2219240 (3d Cir. July 17, 2009). So long as a logical relationship exists between charges,

courts will allow the joinder of defendants under Rule 8. Id.; see also United States v. Brooks,

2009 WL 116967, at *2 (E.D. Pa. Jan. 15, 2009).

The issue here is whether the charges arising out of the three different robberies are of the

"same or similar character" or "are connected with or constitute parts of a common scheme or

plan." Defendant Shaw argues that the six counts were improperly joined under Rule 8(a) due to

variances in time and location, varying witness descriptions of both the robber and the gun used,

and the lack of any unique or identifying characteristics to tie the robberies together.  The Court cannot agree.  The facts indicate that there is a logical relationship between the charges, and that the offenses charged are of a similar character.  See Brooks, 2009 WL 116967, at *2 ("Although the two [confrontations with police] were separated by seven months and more than a few miles in two different Philadelphia suburbs, they sufficiently share enough connection to invoke the presumption of judicial economy and service to the public interest addressed by joinder of offenses for a single trial.").

The three robberies from which the charges arise are clearly similar in character.  Each robbery involved a gun-point robbery of either one or two people.  Each occurred within close proximity to 1537 N. 55th St. in Philadelphia, and all occurred over a five-month period.  Each involved only one robber, who first viewed his victim(s) and later approached the victim(s) from the side or behind with a small revolver handgun.  In all three robberies, the robber commanded the victim(s) to hand over money, and then threatened to shoot the victim(s) if he did not comply.  The Court agrees with the government that the variances set forth by Defendant Shaw are not so great as to negate the similar character of the three robberies for Rule 8(a) purposes.  Indeed, "Rule 8(a) does not require the Government to show that a series of robberies all employed clown masks, an unusually worded demand note, or a particular weapon.  Instead, the Government need only show that the offenses are of the 'same or similar character', however prosaic the defendant's modus operandi may have been."  United States v. Gordon, 2004 WL 1879988, at *2 n.1 (E.D. Pa. Aug. 17, 2004).

The Court's holding is consistent with case law involving robberies where joinder was held to be appropriate.  See, e.g., United States v. Torres, 251 Fed. Appx. 763, 2007 WL

-12-

2745715, at *2 (3d Cir. Sept. 21, 2007) (where defendant was charged with multiple counts stemming from ten alleged gunpoint robberies of bars, grocery stores, and pizzerias over one-month period, Judge Smith held that joinder of the counts was appropriate because robberies were part of "common plane or scheme," evidence from each of the robberies would have been admissible in separate trials to demonstrate the defendant's identity as one of the robbers, and "each offense was relevant to show a common plan to rob similar commercial establishments within a few miles of each other at gunpoint"); United States v. McNeill, 2007 WL 2234516, at *2 (W.D.Pa. Aug. 2, 2007) (where defendant was charged with nine counts of armed robbery and firearms offenses stemming from robberies of a convenience store, pizza shop, grocery store, and bank over three-day period, Judge Diamond denied severance and held that joinder was proper because the robberies were of the same or similar character and constituted part of a common plan or scheme where all four robberies were committed by defendant over a three-day period, each was aided and abetted by same co-actor, the co-actor was to testify that modus operandi of all robberies was same, security photographs identified the robber wearing the same clothes in the first three robberies, and eyewitness to the bank robbery were to testify that the robber wore identical clothes when robbing the bank).

Indeed, in United States v. Oliver, 379 F.Supp. 2d 754 (E.D. Pa. 2005), a defendant was convicted of robbing two shopping mall jewelry stores eight months apart in two different Philadelphia suburbs. The defendant filed a motion to vacate his sentence on multiple grounds, including ineffective assistance of counsel based on counsel's failure to object to joinder of the robbery counts. The two robberies were somewhat different in their nature and execution, but Judge Rufe held that the trial court would have acted "well within [its] discretion in denying a

motion to sever" because "[b]oth of these robberies involved the forceful taking of jewelry from jewelry stores in shopping malls. . . . Moreover, the trial court instructed the jury to consider each robbery separately. . . . Petitioner is not entitled to relief on this ground." Id. at 764.

Similarly, in United States v. Thompson, 574 F.Supp. 651 (E.D. Pa. 1983), a defendant was convicted of two counts of bank robbery, and subsequently brought a motion to vacate, set aside, or correct his sentence. One of the defendant's grounds for appeal was Judge Luongo's denial of his motion to sever the indictment's two bank robbery counts. On appeal, Judge Luongo held that joinder had been appropriate because the two robberies were of the same or similar character even given the factual differences between the two robberies: "The arguments of petitioner's trial counsel that these robberies were dissimilar because one occurred in Philadelphia and one in Wynnewood; one involved a commercial bank, the other a savings bank; one involved three men, the other a single robber; were unpersuasive." Id. at 652. Additionally, case law from outside the Third Circuit is consistent with the cases discussed above.[2]

For these reasons, the Court holds that the three separate gunpoint robberies, and the three sets of counts arising from the robberies, are of a "similar character," and thus are properly joined under Rule 8(a). The government also contends that the three robberies were part of a "common

---

[2]See, e.g., United States v. Jamal, 87 F.3d 913 (7th Cir. 1996) (In case involving multiple robbery counts, Seventh Circuit found that "[b]ecause the three charges in the indictment are identical – robbery in violation of 18 U.S.C. § 2113(a) – the joinder issue under Rule 8(a) comes to a screeching halt."); United States v. Chambers, 964 F.2d 1250 (1st Cir. 1992) (First Circuit held that six bank robberies were properly joined because similarities among six charged offenses met Rule 8(a), where each robbery was a bank robbery; the robberies occurred over a 10 week period, each took place in the greater Boston area, and the six tellers who were robbed testified at trial as to a similar modus operandi during the robberies, which included threats of violence with a bomb or gun, and the robber giving the teller a handwritten note demanding money).

scheme or plan." While the Court need not rule on this issue because Rule 8(a) has not been violated, the Court agrees that the evidence shows a common scheme.

## 2.  Discretionary Severance Under Rule 14(a)

Alternatively, Defendant Shaw argues that even if the offenses were properly joined under Rule 8(a), he is nevertheless entitled to severance of the three sets of counts on the grounds of prejudicial joinder. Relief from joinder of multiple offenses is authorized pursuant to Rule 14(a), which states:

> If the joinder of offenses . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Under this rule, severance is granted at the Court's discretion. Zafiro v. United States, 506 U.S. 534, 538-39 (1993) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."). Because the importance of judicial economy dictates a preference for joint trials, a district court should exercise this discretion only if the defendant has shown there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants . . . . " Id. at 539. In deciding whether a "specific trial right" would be compromised, courts should consider the degree of complexity of the charges and the possibility of clear and substantial prejudice to a defendant in a joint trial. Hudgins, 2007 WL 1695376, at *2 (quoting Zafiro, 506 U.S. at 539).

Under a Rule 14 analysis, a defendant bears a "heavy burden" to demonstrate that he or she would suffer "clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Rogers, 2009 WL 650284, at *1 (E.D. Pa. Mar. 12, 2009). Non-specific allegations of

prejudice will not suffice.  Id.  Indeed, a defendant seeking relief under Rule 14(a) has the burden of demonstrating that failing to grant severance would result in "real, not fanciful" prejudice. United States v. Segal, 534 F.2d 578, 583 (3d Cir. 1976).

Defendant Shaw first argues that he may be prejudiced in presenting defenses because he may want to testify about the Lucky's Pizza shop incident, the robbery after which he was arrested, but assert his privilege against self-incrimination with respect to the other robberies.  It is true that prejudice "may result if the defendant wishes to testify to one but not the other of two joined offenses."  Hudgins, 2007 WL 1695376, at *3.  However, to justify severance on these grounds, the Third Circuit requires defendants to make a "convincing showing" that he or she has "important testimony" to give on one charge, and a "strong need to refrain from testifying on the other [charge]."  United States v. Reicherter, 647 F.2d 397, 400-01 (3d Cir. 1981).

In the present case, Defendant Shaw failed make the required showing that he has important testimony to give regarding the Lucky's Pizza incident, but also a strong need to refrain from testifying as to the other incidents.  Defendant has failed to present any information about the nature of the testimony he would give regarding the Lucky's Pizza robbery other than expressing a desire to explain his version of what happened in that incident.  Further, Defendant has failed to point to any specific harm that would result from his testifying about the Lucky's Pizza robbery but not the other two robberies, other than providing a vague statement that the jury would wonder why Defendant had no alibi.  See Gorecki, 813 F.2d at 43 ("Defendant's bare allegation that the joinder prevented his testimony on the weapons charge, without a specific showing as to what that testimony may have been, fails to meet the stringent requirements for a Rule 14 showing of prejudice."); Reicherter, 647 F.2d at 401 (where defendant wants to show

that he or she has "important testimony to give concerning one count," and "a strong need to refrain from testifying on the other," it is "essential that the defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine."). Defendant Shaw has not established that he is entitled to a severance on this basis. If at trial, Defendant still intends to testify only to the Lucky's Pizza robbery, this Court can and may restrict the prosecution from cross examination or argument about the Defendant's lack of testimony regarding the first two robberies.

Second, Defendant argues that the jury may cumulate the evidence of the separate crimes, and third, that the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt. The Court does not agree with either proposition. In a separate trial of each robbery, evidence pertaining to the other robberies would likely be admissible under Fed. R. Evid. 404(b) to show motive, intent, plan, identity, or absence of mistake. See Torres, 2007 WL 2745715, at *2 ("In [this] case, each offense was relevant to show a common plan to rob similar commercial establishments within a few miles of each other at gunpoint and to establish [defendant]'s identity as one of the robbers."). Thus, as here, in cases where "evidence of each of the joined offenses would be admissible in a separate trial for the other," concerns about cumulation of evidence and inference of a criminal disposition are "largely absent." McNeil, 2007 WL 2234516, at *3 (quoting United States v. Dileo, 859 F.Supp. 940, 944 (W.D. Pa. 1994)).

Further, Defendant has offered no reason to believe that a properly instructed jury will not be able to compartmentalize evidence of one robbery from evidence of the other two robberies.

-17-

See Hudgins, 2007 WL 1695376, at *4 ("The case before the Court is not particularly complex. It involves only two defendants and six charges. The Third Circuit has upheld the denial of severance in far more complex cases."). The Third Circuit has stated, in an analogous situation, that "[a]lthough the methods [of ten gunpoint robberies of bars, grocery stores and pizzerias over a one-year period] were similar, the jury was unlikely to confuse them as the crimes were not complex and were committed against distinct entities with easily distinguishable names." Torres, 2007 WL 2745715, at *2. Similarly, here, the facts are not so complex that a jury could not easily compartmentalize the discrete elements of each charge, and there is no reason to believe that the jury will have "any difficulty in segregating and considering the relatively simple facts pertaining to the distinct counts." United States v. Hagins, 2008 WL 516430, at *4 (E.D. Pa. Feb. 26, 2008) (quoting Reicherter, 647 F.2d at 400).

Additionally, because Defendant "is represented by experienced counsel . . . the risk of confusion is virtually non existent." Dileo, 859 F.Supp at 940. Further, the danger that the jury might confuse the two sets of counts can be prevented with a proper instruction that the jury must give separate consideration to each separate charge. Id. (citing Zafiro, 506 U.S. at 539) (recognizing that limiting instructions often suffice to cure any risk of prejudice); see also Hagins, 2008 WL 516430, at *4 n.5 ("The Supreme Court has noted on multiple occasions 'the almost invariable assumption of the law that jurors follow their instructions.' We are therefore assured that a jury will properly follow our instruction to consider each of the incidents separately." (internal quotations and citations omitted)). For these reasons, the Court holds that severance on these grounds is not proper.

Fourth, Defendant argues that a latent feeling of hostility may be engendered by the jury

against Defendant by the charging of several crimes. The Court does not agree, and adopts the reasoning set forth by Judge Smith in <u>Torres</u>, 2007 WL 2745715. In <u>Torres</u>, where ten gunpoint robberies of various businesses occurred over a one-month period, Judge Smith analyzed whether the charging of several crimes together made the jury hostile. Judge Smith held that because the crimes were similar in nature, this factor weighed <u>against</u> a finding of prejudice to the defendant: "The crimes did not differ so greatly in nature that one was more likely to arouse hostility than another. Although some of the crimes involved injury to others, all of the counts arose from gunpoint robberies." 2007 WL 2745715, at *2. In the present case, the three robberies were of a similar nature. The Court therefore holds that Defendant is not entitled to severance on this basis.

Defendant argues that courts have severed offenses that met Rule 8(a)'s joinder requirements where those courts found prejudice that was lesser than the prejudice which will arise in the present case. Yet, the three cases cited by Defendant from within the Third Circuit for this proposition all are easily distinguishable from the facts in the present case. First, <u>United States v. Delbridge</u>, 2007 WL 710245 (W.D. Pa. Mar. 6, 2007), is distinguishable because the severed charges stemmed from three drug-related incidents, the first incident occurring <u>two years before</u> the second incident, and the third incident occurring <u>three years after</u> the second incident. Here, the five-month time period is far shorter than the five-year time period in <u>Delbridge</u>. Second, <u>United States v. Gomez</u>, 111 F.Supp. 2d 571 (E.D. Pa. 2000), is distinguishable because the defendant who moved for severance was charged <u>only</u> with conspiracy to distribute drugs, whereas his four co-defendants were charged <u>both</u> with conspiracy to distribute drugs <u>and</u> conspiracy to commit murder. The Court thus found a risk of prejudice because the prosecution

planned to offer certain identical overt act evidence as evidence of <u>both</u> crimes, and thus, the risk

of jury confusion in untangling the two separate conspiracies was high. Here, no such risk of

jury confusion exists. Third, <u>United States v. Braig</u>, 702 F.Supp. 547 (E.D.Pa. 1989), is

distinguishable because the court held that severance was required because the only commonality

between the offenses charged was the fact that the defendant was a judge at the time the offenses

allegedly were committed.

Defendant Shaw has not demonstrated that the risk of unacceptable prejudice overcomes

the preference that the procedural rules and case law hold for a single trial in circumstances such

as those presented here. <u>See Brooks</u>, 2009 WL 116967, at *2. Defendant Shaw is obliged to

demonstrate "clear and substantial prejudice" if he wishes to achieve severance of these counts.

<u>See id.</u> Unless Defendant Shaw could show that a single trial of the three sets of counts would

subject him to fundamental unfairness, the Court <u>must</u> deny this motion. <u>See id.</u> (citing <u>United

States v. Quintero</u>, 38 F.3d 1317, 1343 (3d Cir. 1994)).

Because of the extensive procedural safeguards discussed above, which reduce the risk of

spillover or jury confusion, Defendant's fear of prejudice is not warranted. The Court will, of

course, admonish the jury to consider independently the three sets of counts and the evidence

relating to each of them. <u>See Brooks</u>, 2009 WL 116967, at *2. There is no reason to expect the

jury to either refuse or be unable to follow such an admonition. <u>See id.</u> The Court therefore

concludes that the three sets of counts are properly joined under Rule 8(a), and Defendant Shaw

has not advanced sufficient prejudice from their joinder under Rule 14 to justify severance.

BY THE COURT:

/s/ Michael M. Baylson

_____
Michael M. Baylson, U.S.D.J.


O:\Criminal Cases\08-476 Shaw, US v\Shaw - Memorandum Pretrial Mots.wpd